BENJAMIN M. DAI, Esq., California State Bar 153823
12106 Wilshire Blvd., Suite 5
Los Angeles, CA 90025
Phone 310 207 1776
Fax 310 207 1779
Ben@mjplaw.org

Attorney for Plaintiffs,

FILED
OCT 13 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

SBA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

CV 11   50 46

| | |
|---|---|
| NATIONAL ASSOCIATION for the ADVANCEMENT of MULTIJURISDICTION PRACTICE (NAAMJP), TANESHA WALLS BLYE, KIMBERLY JANE ALFRIEND ROBERT WARNER JOEL D. JOSEPH, DENNIS E. WIESSNER, JR. RICHARD A. HAKE, DAWN BERTUCCI, <br><br><br> Plaintiffs <br><br> vs. <br><br> CALIFORNIA SUPREME COURT, TANI G. CANTIL-SAKAUYE, CHIEF JUSTICE, JOYCE L. KENNARD, MARVIN R. BAXTER, KATHRYN M. WERDEGAR, MING W. CHIN, CAROL A. CORRIGAN, GOODWIN LIU, ASSOCIATE JUSTICES, <br><br> Defendants | CIVIL ACTION NO <br><br> COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF INVALIDATING CALIFORNIA STATE SISTER-STATE BAR ADMISSION RULES AND THE CALIFORNIA BAR EXAM FOR EXPERIENCED ATTORNEYS UNDER THE: <br> 1. PRIVILEGES & IMMUNITIES CLAUSES & RIGHT TO TRAVEL <br> 2. COMMERCE CLAUSE <br> 3. FIRST AMENDMENT <br> 4. SUBSTANTIVE DUE PROCESS <br> 5. PROCEDURAL DUE PROCESS <br> 6. STATE LAW <br> 7. 42 U.S.C. § 1983 <br> 8. DECLARATORY JUDGMENT (28 USC § 2201) <br><br> . |

Complaint

Page 1 of 45

**INTRODUCTION**

1.  Our founding fathers brought forth a new nation conceived in liberty and dedicated to the proposition that all men are created equal.   If all men and women are created equal, and American lawyers are men and women, then all American lawyers are created equal.  The issue in this case is whether the equal rights, privileges and immunities inherent in bar admission on motion, which the United States Supreme Court has squarely held is a constitutionally protected privilege and immunity, Supreme Court of Virginia v. Friedman, 487 U.S. 59 (1988), should be denied to the Plaintiffs.

2.  A two year California study in the early 90s on the Future of the California Bar over the next 25 years was appointed by four different authorities.  This Commission was composed of a diverse blue-ribbon panel of 30 California lawyers and judges including the Hon. CRUZ REYNOSO, the Hon. CAMPBELL LUCAS, the Hon. ELWOOD LUI; several former presidents of the California State Bar; and many attorneys that were subsequently appointed as federal judges including the Hon. MARSHA BERZON, the Hon. SUSAN Y. ILLSTON and the Hon. ANDREW J. GUILFORD.  This Commission unanimously recommended that California adopt reciprocal admission on motion for experienced attorneys licensed in another state for three years.  See The Final Report of the Commission on the Future of the Legal Profession and the State Bar of California (Apr. 1995)   This Commission further unanimously recommended the United States District Courts in California adopt admission on motion for experienced attorneys.

3. The US Supreme Court has held that professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" Wiggins v. Smith, 539 US 510, 524 (2003). The American Bar Association Report of the Commission on Multijurisdictional Practice[1]

---

[1] American Bar Association, Report of the Commission on Multijurisdictional Practice available on line at http://www.abanet.org/cpr/mjp/intro-cover.pdf.

Complaint                                                                    Page 2 of 45

(2002) carefully studied *Client Needs in the 21st Century* in open hearings held all over the United States, recommending States adopt admission on motion for experienced attorneys, concluding the requirement and ritual of taking another bar exam injures the public. This ABA conclusion that one bar exam is more than enough was facilitated by revolutionary changes in technology and increasing globalization, endorsed by the Conference of Chief Justices, and adopted in 39 States.

4. The ABA Ethics 20/20 Commission last month also strongly recommended that all States adopt admission on motion privileges for attorneys with three years experience. See Complaint ¶¶ 30-34.

5. The California legislature and governor have already enacted legislation authorizing bar admission on motion for experienced sister-state attorneys without them taking the California bar exam. [2] Senate Bill 1782 enacted 99-0 signed by the Governor in 2000 declared: "[i]t is the intent of the Legislature that the Supreme Court of California should adopt rules permitting the admission to practice law in California of an attorney who is licensed in another state and who has not passed the California bar exam." S.B. 1782, Leg., Reg. Sess. (Ca. 2000)

6. The purpose of a bar exam is to protect the public against risks that would be posed by lawyers who lack the knowledge and skills expected of *entry-level practitioners*. The purpose of a professional licensing test is to measure *entry level* competence to ensure public protection. An experienced attorney has already demonstrated more than *entry level* competence with his prior admission and experience. One of the key ABA MJP Commission conclusions designed to modernize the practice of law was that experienced attorneys do not need to "reinvent the wheel,"

---

[2] State Bar of California past President, Futures Commission Member, and now U.S. District Judge ANDREW J. GUILFORD'S testimony before the Senate Judiciary Committee led to this reform. See GUILFORD, "Reciprocity Reform: The Future is Now," California Bar Journal p. 7 Jan. 2000)

Complaint                                                                 Page 3 of 45

and take another bar exam to protect the public and practice successfully in another state.  The Commission held: "Often, the most significant qualification to render assistance in a legal matter is not knowledge of any state's given law, but knowledge of federal or international law or familiarity with a particular type of business or personal transaction or legal proceeding."[3]  It concluded, what everyone knows, there is a learning curve, and a first class yardstick measuring competence is prior licensing and experience practicing.[4]  United States Judicial Conference studies empirically prove a direct correlation with experience and competence.[5]  The ABA in rejecting the tradition of each state having its own licensing test for experienced attorneys, further recommended States complete the reciprocity circle by adopting reciprocal discipline, to guard against an attorney escaping discipline by moving to another State.

7. The California Futures Commission and ABA MJP and 20/20 Commissions also necessarily presumed — if by law, a layman is presumed to know the law, or can presumptively find it, and is presumptively capable of representing herself — *a fortiori* an experienced licensed attorney can do the same.  The hypothesis that a layman is presumptively competent, while on the other hand, an experienced lawyer is presumptively incompetent is an artifice.  Moreover, the law is often unsettled, ambiguous, far from an exact science, with judges often zealously disagreeing with

---

[3] http://www.abanet.org/cpr/mjp/intro-cover.pdf p. 2

[4] American Bar Association, *Model Rule on Admission by Motion*, August 2002, http://www.abanet.org/cpr/mjp/201g.doc.

[5] "(N)o one has yet devised an examination which will test one's ability to be a courtroom advocate." Report and Tentative Recommendations of the Committee to Practice in the Federal Courts in the Judicial Conference of the United States. 79 F.R.D. 187, 196. "Lawyers with previous trial experience are much more likely to turn in very good performances, and it permits the inference that experience improves the quality of trial performance." Id. at 196. There is a correlation between the quality of trial performance and the prior experience of the attorneys evaluated. 83 F.R.D. at 222.

each other despite looking at the exact same facts and precedent, with subsequent panels reversing the prior holding.

8.  The European Union has concluded that one bar exam is more than enough. In the EU there are 40 countries, one million lawyers, and 23 official languages.  A lawyer licensed in one country can open an office temporarily or permanently in any country in the EU.  Once practicing for three years in that country he becomes a member of his new country's profession in addition to his initial licensing country.

9. The <u>California Futures Commission</u> and ABA's recommendations for reciprocal licensing on motion for experienced attorneys is collaterally reinforced by scientific findings from the emerging field of *expertise and expert performance*. <u>See</u> K. Anders Ericsson, Ed., <u>The Cambridge Handbook of Expertise and Expert Performance</u> (Cambridge University Press 2006). K. Anders Ericsson is the leading pioneer in this cross-disciplinary field.  Cognitive scientists have concluded that it takes 10,000 hours to develop true expertise in any field, taking the brain this long to assimilate all that it needs to know to achieve true mastery. Experienced experts surpass novices, those new to a profession, in seven major ways: (a) generating the best solution; (b) pattern recognition; (c) qualitative analysis; (d) self-monitoring skills in terms of their ability and knowing what they do not know; (e) choosing appropriate strategies; (f) seeing and exploiting opportunities; and (g) cognitive effort, meaning they work faster, with less effort, and greater control. <u>Id</u>. at 27.

10.  Cognitive scientists have further concluded major scientific and societal advancements are often the product of cross-pollination between fields.  Science has proven diversity increases fitness (more minds at work), innovation (creativity), levels of trust, and robustness in organizations; diversity reduces error because all of us together

Complaint                                                                                      Page 5 of 45

are smarter than any of us individually; it prevents dominant coalitions from taking over because everyone has the opportunity to participate.[6]

11. Cognitive scientists have concluded the highest levels of expertise, like Tiger Woods golf swing at the Masters on the 18th hole, or Newton postulating the laws of gravity "in a contemplative mood ...occasioned by the fall of an apple,"[7] are characterized by contextually based intuitive actions that are automatic, sub-conscious, and difficult or impossible to report verbally.  These intuitive actions are not testable.  They are born of experience.  They cannot be predicted, often emerging synergistically as the whole is greater than the sum of its parts.  They often emerge after long incubation periods.

12. The received assumption that the California bar exam for experienced sister-state attorneys is a *valid* and *reliable* measurement is demonstrably false.  As the government was convinced in its assumption that women were witches and that its prosecutorial methods were well suited to proving guilt, five nationally respected testing experts, including experts from the National Conference of Bar Examiners and the California State Bar's own testing expert, have concluded the California experienced attorney licensing exam is not *valid* or *reliable* measuring device.  The defendants' experienced attorney licensing test fails to meet multiple well established testing Standards.[8]  See Complaint ¶¶ 45-59. The intended or unintended result of these

---

[6] Scot E. Page, Understanding Complexity, Lecture Four "Why Different is More," Lecture Six "Emergence I – Why More is Different" (The Teaching Company 2009)
[7] Stephen Hawking, A Brief History of Time 2nd. Ed, p. 5 (1998 Bantam)
[8] The Standards for Educational and Psychological Testing (1999) (Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education) (Standards) were developed "to provide criteria for the evaluation of tests, testing practices, and the effects of test use." Id. at p. 2. "When tests are at issue in legal proceedings and other venues requiring expert witness testimony it is essential that professional judgment be based on the accepted corpus of knowledge in determining the relevance of particular standards in a given situation.  The intent of the Standards is to offer guidance for such judgments." Id. at 4.

fundamental testing defects is a territorial wall of protection, decreased access to the Courts, and increased costs of legal services.  These California licensing tests further contradict <u>Supreme Court of Virginia v. Friedman</u>, *supra*, 487 U.S. 59 (1988), holding bar admission on motion is a constitutionally protected privilege and immunity.

13.  The "justice gap," the ability of the wealthy over the less wealthy to obtain meaningful access to the Courts, similar to the enormous gap in the ability to obtain fundamental health care, provides additional compelling evidence for the need for remedial change in lawyer licensing.  Former Chief Justice Ronald M. George declared at a Joint Session of the California Legislature on March 25, 2008:  "Those who come to the Court increasingly arrive without representation."  The Los Angeles Superior Court Presiding Judge declared of the 2.7 million *civil* cases filed in 2005, two million (2,000,000) cases had at least one party in *pro per*, in large part because people cannot afford lawyers.  The Legal Services Corporation found in a 2005 study, "Documenting the Justice Gap," legal aid cannot meet the needs of 80% of the citizens it serves.  In the course of two months (60 days), the Legal Aid Foundation of Los Angeles turned away thirteen thousand (13,000) people eligible for legal assistance.  Similarly, despite a constitutional right to counsel, there are over 300 pending death penalty cases without counsel on the Honorable California Supreme Court's docket.  It has been estimated that it costs the State of California $1,000,000 a year for each pending capital case.  Like arteries clogged with fat, the extraordinary need for free-flowing access to the California Court is undeniable.   Brooking Institute scholars Clifford Winston and Robert W. Crandall in their book <u>Time to Deregulate the Practice of Law</u> (2011) convincingly argue that there are <u>not</u> too many lawyers — there are too many lawyer regulations.  A doctor licensed in one State can obtain reciprocal licensing in every State, but a lawyer in other States has to re-invent the wheel to obtain a California law license. This California restriction does not protect the public, as it would be less expensive and time

Complaint                                                                                          Page 7 of 45

consuming for Plaintiffs to buy malpractice insurance, than to take and pass the California attorneys' bar exam with its standard error of measurement greater than 50%.

14. While Plaintiffs are California and American citizens, paying California and federal income taxes, and are unemployed or under-employed licensed attorneys, almost a billion dollars of legal work is annually out-sourced to India, when Indian lawyers are not American citizens, not licensed by any State, and do not pay California state or federal income taxes.  The scales of justice are not in balance as foreign lawyers have more liberties and privileges under California law then Plaintiffs.

15. California is the most populous State and often a trend setter.  The highest calling of leadership and government is to promote the growth and full development of its people, including life, liberty, and the pursuit of happiness.  Adopting admission on motion will enable California lawyers to obtain admission on motion privileges in other States that are now generally not available because the majority of other States have retaliated against California for its isolationist ways.  Integrating bar admission on motion for experienced attorney is a win-win proposition, modernizing the California Courts on the basis of the best evidence, increasing diversity and interstate mobility, lowering the cost to petition the California Courts, decreasing in pro per filings, increasing the availability of qualified counsel for capital cases, opening competition, making the California Court more responsive to the People it serves, reinforcing the Full Faith and Credit clause, ensuring justice, forming a more perfect Union consistent with our Information Age, increasing revenue for the State Bar of California by hundreds of thousands of dollars, and enhancing the national prestige and influence of the California Supreme Court.

## JURISDICTION & VENUE

16. This Court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate as defendants' principal office is in San Francisco, California.  While legal citations are generally not necessary in *Notice Pleading*, Plaintiffs must "plead sufficient factual

Complaint                                                          Page 8 of 45

matter to show that" Defendants acted "for the purpose of" violating Plaintiffs' constitutional rights." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009). Plaintiffs will thus plead specific facts as well as the citations supporting their violation of constitutional rights claims.   Plaintiffs would be remiss in their professional responsibility if they did not provide full and fair notice of their claims to the members of the Honorable California Supreme Court in view of the national importance of the issues presented, the public function of the Courts, and the constitutional role of the Plaintiff attorneys in vindicating federal rights.

**PARTIES**

17. Plaintiff NATIONAL ASSOCIATION for the ADVANCEMENT OF MULTIJURISDICTION PRACTICE (NAAMJP) is a public benefit corporation organized under California law with offices in Los Angeles.  Plaintiff, like other corporations such as in Citizens United v. Federal Election Commission, 130 S.Ct. 876 (2010) (holding corporations have First Amendment rights),  is engaged in interstate commerce and advocacy throughout the United States; it is directly injured by State's licensing rules, on their face and as applied, that require it to select an in-group attorney it does not want to associate with, and compel it to engage in confidential  attorney-client relationship, and to pay that local attorney in order to exercise its sacred Bill of Rights' freedom to petition under a Constitution designed to ensure justice and to form a more perfect Union. Plaintiff is also injured by Rule 9.45 in the exercise of its First Amendment rights because it does not qualify as a registered legal services organization.  Plaintiff is injured in the exercise of its First Amendment rights by Rule 9.46 because it does not meet the qualification of having ten employees. Plaintiff also asserts association and/or third-party standing because many of its members, including Counsel for Fortune 500 companies, want to remain anonymous, not wanting to alienate the judicial hand that licenses them, or decides cases on behalf of their clients.  NAAMJP representatives have published their views and testified in person before the ABA MJP Commission, the

20/20 Commission, and the California Legislature that enacted Senate Bill 1782 by vote of 99-0 calling for reciprocal admission in California.

18. Plaintiff TANESHA WALLS BLYE (30s) is a black attorney with over six years experience, serving in Florida as a state public defender for 18 months, and working as an attorney for four and one-half year as an associate involved in state and federal cases.  Plaintiff has also taught business law and other courses at the University of Phoenix.  At 2,000 hours per year, Plaintiff has over 12,000 hours of unblemished attorney experience.  Plaintiff grew up in a large family in the Bay Area, and went to college on the East Coast, later graduating from the University of Miami Law School with outstanding credentials. She is married with two young children. Plaintiff's spouse, who is from Florida, accepted a Vice-Principal position at Sky Line High School in Oakland.  Plaintiff is a pillar in her community. Plaintiff, like Michelle Obama and tens of thousands of other Americans, recently relocated (back to Oakland) following her husband's career path, resulting in the forfeiture of her law license because of her crossing a state line.  TANESHA WALLS BLYE is stigmatized and injured personally, professionally, and economically by being denied reciprocal bar admission on motion privileges in California.  The already lowered ceiling for female lawyers is further decreased by the California Supreme Court not having admission on motion privileges, when over 65,000 lawyers have been admitted on motion in other states since 2002. Plaintiff's forfeiture of her privilege and immunity to practice law prevents her from providing legal counsel to already under-represented minorities in California.  Adding injustice to forfeiture, Plaintiff has not been certified for admission because of being twice failed on the California bar exam on the basis of 100% subjective licensing tests that fail to meet testing Standards.  This licensing test does not provide public protection.  It is designed and administered to provide economic protection. Plaintiff has thus been arbitrarily and irrationally denied membership privileges and immunities in the Bar of the California Supreme Court and the United States District Courts in California.

19. Plaintiff KIMBERLY JANE ALFRIEND was a "registered legal services attorney" employed by the Children's Law Center (CLC) of Los Angeles under California Rule 9.45.  Plaintiff completed a rigorous rite of passage including ABA law school graduation for entry into the legal profession.  She is admitted to the bar of the Maryland Supreme Court, but she is not admitted in California.  Before moving to California, she worked as a Maryland licensed attorney for over ten years specializing in children's law and delinquency proceedings.  Plaintiff is treated as a second class citizen by Rule of Court 9.45.  Her employer CLC is one of the largest, nonprofit legal services organizations in the nation, providing direct advocacy for children, working with both California State law and federal law to ensure protection of children, and fighting for educational rights and protections for children entering the foster care system.  CLC attorneys represent over 25,000 abused and neglected children under the jurisdiction of the Los Angeles County Dependency Court.  As former Chief Justice GEORGE emphasized in his 2008 State of the Judiciary  "(T)hese children are among the most vulnerable members of our society."  CLC leveraged KIMBERLY JANE ALFRIEND's prior Maryland experience and expertise, not only to provide direct representation to its clients and to mentor novice attorneys, but as a springboard to expand its services in developing a special unit to assist dependent children who are drawn into the delinquency system.  CLC wants her to continue working and appearing in court after her three years of service.  Plaintiff forfeited her privilege and immunity under Rule 9.45 and is categorically ineligible to appear in a California courtroom on behalf of CLC and the indigent — after three years as a "registered legal services attorney."  It is arbitrary and irrational to conclude that an attorney somehow becomes categorically disqualified with three years of experience as a registered legal services attorney, but is categorically qualified before reaching three years.  Rule 9.45. does not provide public protection; rather, it is designed to facilitate territory protection.  Plaintiff took substantial time off of work without pay to study and prepare for the California bar exam, a test that

Complaint                                                          Page 11 of 45

has virtually nothing to do with her practice specialty.   Plaintiff was failed. Plaintiff was denied membership privileges and immunities in the Bar of the California Supreme Court on the basis of tests that fail to meet testing Standards.  Plaintiff is thus no longer one of small number (16) of registered local services attorneys in a state with 35 million people.  Plaintiff does not live by bread alone.  Her employment and privilege to serve is her life's work.  Plaintiff is injured personally, professionally, and economically by California's failure to have admission on motion.

20. Plaintiff ROBERT O. WARNER is admitted to practice in Arizona, Colorado, and the District of Columbia.  He is an ABA law school graduate.  He has been a member of the bar for over 17 years.  Plaintiff is Counsel for Fireman's Fund and a registered in-house counsel under Rule of Court 9.46.  Under Rule of Court 9.46, Plaintiff is treated as a second-class citizen and categorically disqualified from appearing as counsel on behalf of anyone other than himself.  It is arbitrary and irrational to conclude that a registered in-house counsel somehow becomes categorically disqualified from entering a California courtroom because he has an office in California, but he is qualified to appear as counsel on behalf of his employer in every other state. It is arbitrary and irrational for the California Rules of Court to afford in-house counsel and registered legal services disparate privileges and immunities.  Rule 9.46. is does not protect the public.  It injures the public and facilitates unlawful territory protection, i.e. monopoly protection.  Plaintiff took substantial time off of work to study and prepare for the California bar exam, a test that has virtually nothing to do with his practice specialty.   Plaintiff was failed on the California bar exam and not certified for membership privileges and immunities in the Bar of the California Supreme Court on the basis of 100% subjective tests that have a standard error of measurement greater than 50%.   Plaintiff alleges the requirement he must prove his competence to practice successfully in California, by the one and only proof, of taking another bar examination

is an artificial barrier providing turf protection that drives up the costs of legal services and reduces competition.

21.  Plaintiff JOEL D. JOSEPH (60s) has been a member of the bar in good standing of numerous United States and Federal Courts for 36 years. Plaintiff has over 70,000 hours experience as a lawyer.  He graduated from Georgetown University Law Center. He has taught law school classes. He has written 10 books on the law; Justice Thurgood Marshall wrote a forward for his book, <u>Black Mondays – Worst Decisions of the Supreme Court</u> (National Press 1987, Inprint Press 2008).  Plaintiff has not been certified for admission because of being repeatedly failed on the California bar exam. Plaintiff has been denied membership privileges and immunities in the Bar of the California Supreme Court on the basis of tests that fail to meet testing <u>Standards</u>.  On his last attempt, he again took a bar review course, studied vigorously, took the objective MBE that is given nationally, obtained a score that would have passed him in every state including California, but received an average score of 56 on the subjective questions.  No justification or explanation is provided.  JOEL D. JOSEPH, like the other Plaintiffs, is also categorically banned from *pro hac vice* admission because he lives and has an office in California.  Plaintiff avers it is arbitrary and irrational for the State's Rule 9.44. to authorize foreign legal consultants to register and practice their home country's law, and to deny the same privileges and immunities to sister-state attorneys. Rule 9.44. demonstrates the Rules excluding Plaintiff American citizens are not designed for public protection.  They provide economic protection.

22. Plaintiff RICHARD A. HAKE (50s) is a patent attorney, with a Ph.D. in Chemistry. He lives in San Diego with his wife and children. He cannot find work as a lawyer in this economic downturn, not because his high-tech skill set is not needed, but because of being stigmatized and categorically disqualified from California bar admission.  Plaintiff is thus injured personally, professionally, and economically. Plaintiff's patent law practice is federal or cross-border in nature and has virtually

nothing to do with state law.  Plaintiff has not been certified for admission and denied

membership privileges and immunities in the Bar of the California Supreme Court on the

basis of tests that fail to meet testing <u>Standards</u>.

23.  Plaintiff DAWN BERTUCCI passed bar exams in Maryland and New York.

She has been a lawyer in good standing since 1995.  Like thousands of other women,

she moved across State lines to further her (physician) husband's career.  She was

recently divorced and has two children six and eight.  She has been failed on the

California bar exam three times.  The last time she took the test, she became sick and

exhausted during the middle of the exam. It is physically impossible for her to go thru

this ordeal as a single mom with two children at home.  Plaintiff is left with the Hobson's

choice of either giving up being a lawyer or a mother.

24. The defendants are the CALIFORNIA SUPREME COURT, and the

Honorable TANI G. CANTIL-SAKAUYE, CHIEF JUSTICE, and the Honorable

ASSOCIATE JUSTICES: JOYCE L. KENNARD, MARVIN R. BAXTER, KATHRYN M.

WERDEGAR, MING W. CHIN, CAROL A. CORRIGAN, and GOODWIN LIU sued in

their official and individual capacity.

## FACTS
### A. The ABA MJP Commission Recommendation for Admission on Motion

25. The American Bar Association Multijurisdictional Practice (MJP) Commission

was staffed by a blue-ribbon diverse panel of nationally respected members of the bar.

The predicate for this national study was the dynamic change and nature in evolution

and scope of legal practice during the past century, facilitated by a transformation in

communications, transportation, and technology.[9] Although client needs and lawyer

services have evolved, lawyer regulation has not yet responded effectively to this

revolution.[10]

---

[9] American Bar Association, <u>Report of the Commission on Multijurisdictional Practice</u>, s*upra*, <u>http://www.abanet.org/cpr/mjp/intro-cover.pdf</u> p. 2
[10] <u>Id</u>. p 3.

Complaint                                                        Page 14 of 45

26. The purpose of the bar exam is to protect the public against risks that would be posed by lawyers who lack the knowledge and skills expected of *entry-level practitioners*. Entry-level lawyers, similar to newly licensed airplane pilots, are not expected to have the knowledge, skill, and judgment of a battle tested professional with tens of thousands of hours of experience.

27. As professional athletes instinctively develop their skills over many years, the MJP Commission concluded experienced attorneys are instruments of justice; an attorney's opportunity to use a computer, surf the web, copy, edit, cut and paste *content* from one jurisdiction's law books is technologically the same everywhere.

28. The MJP Commission concluded States that do not have reciprocal admission on motion in the 21st Century **injure the public** by limiting access of experienced attorneys. (Emphasis added). The Conference of Chief Justices endorsed the MJP Commission's recommendations.

29. Likewise, the Conference of Chief Justices, <u>National Action Plan on Lawyer Conduct and Professionalism</u> (Adopted January 21, 1999), reinforces the MJP Conclusion. It concludes the vast majority of attorneys are competent professionals, practice in multiple jurisdictions is the norm, and urges interstate cooperation.

**B. The ABA Ethics 20/20 Commission Recommends All States Adopt Admission on Motion Privileges**

30. The ABA Commission on Ethics 20/20 recently concluded that the ABA should adopt amendments to the Rule on Admission by Motion that would allow all lawyers to qualify for admission by motion with three years of experience. In its report explaining its conclusion, the Commission noted that they "examined many ways in which globalization and technology affected the legal profession, including the increasing importance of cross-border practice," and concluded that, "additional changes are necessary in light of technological developments, economic trends, and client needs and demands."

Complaint                                                                          Page 15 of 45

31. The Commission cited two key factors leading to their recommendation for reducing the length of practice requirement in the Rule for Admission by Motion. First, market and client demands in an increasingly borderless world are fueling the need for lawyers to gain admission in other jurisdictions. Second, lawyers often need to move to new jurisdictions for a wide range of personal reasons, including the need to find employment.

32.  The 20/20 Commission found that admission by motion procedures now exist in forty jurisdictions. The Commission's research revealed that more than 65,000 lawyers have used the procedure in the last ten years. The Commission also found that there is no evidence that lawyers admitted by motion are more likely to be subject to discipline, disciplinary complaints, or malpractice suits than lawyers admitted through more traditional procedures.

33. The Commission further declared that female lawyers were particularly injured by the failure of States to have admission on motion privileges.

34. The main criticisms against Admission on Motion were addressed by the Commission. First, the Commission considered the concern that a lawyer who has practiced for only three years may not be sufficiently competent to practice law in a new jurisdiction. However, the Commission "found no reason to believe that lawyers who have been engaged in the active practice of law for three of the last seven years will be any less able to practice law in a new jurisdiction than a law school graduate who recently passed the bar…" They further concluded that, "the 'local' law concern falsely assumes that passage of the bar examination demonstrates competence in local law." The Commission asks that "the ABA adopt the resolution urging jurisdictions that have not adopted the Model Rule to do so and, in particular, to do so without imposing additional restrictions, such as reciprocity requirements."

***

Complaint                                                                                    Page 16 of 45

### C. The ABA MacCrate Study on Lawyer Competence Finds Bar Exams Do Not Test the Vast Majority of Fundamental Lawyer Skills

35. Robert MacCrate is the distinguished former chairman of the ABA's "Task Force on Law Schools and the Profession" (1992).  The well-regarded "MacCrate Report" describes the skills and virtues necessary to be an effective lawyer.

The "MacCrate Report" identifies ten fundamental lawyering skills:

(1) problem solving,

(2) legal analysis and reasoning,

(3) legal research,

(4) factual investigation,

(5) communication,

(6) counseling,

(7) negotiation,

(8) litigation and alternative dispute resolution,

(9) the organization and management of legal work,

(10) professional self-development.

36. Nine of ten skills identified as *fundamental* to the successful practice of law cannot be tested on a pen and paper bar exam.  A subjective bar exam only tests legal analysis and reasoning.

37. Dr. Geoff Norman is a nationally recognized testing expert with over 30 years experience.  Dr. Norman is one of the experts writing a chapter in the <u>Cambridge Handbook of Expertise and Expert Performance</u>, *supra*.  Dr. Norman writes:

> *"Study after study has shown that it is almost impossible to get judges to agree on scores for essay answers."*

<u>See</u> "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" <u>The Bar Examiner</u>, p. 21 (Nov 2008).

38. There are other fundamental deficiencies in giving subjective *entry* level licensing tests to experienced attorneys. Professional self-development, *after* licensing acquired knowledge and skill gained through experience cannot be tested for several reasons. First, there is the matter of jurisdiction. No State bar exam tests many exclusive areas of federal practice such as patents, intellectual property, copyrights, trademarks, bankruptcy, immigration, admiralty, and federal taxation. Second, one cannot be an expert without experience. It is well known that "practice makes perfect." Skill comes with experience. There is a biological basis for this truth: Neurons that fire together wire together. Synaptic connections become stronger with use. The more you do something the better you get at it. Third, and equally compelling, the cognitive science of Expertise and Expert Performance proves *after* licensing, acquired knowledge and skill is often subconscious, intuitive and cannot be tested. Cognitive science illustrates there is an enormous difference between novices (those new to a profession) and experienced experts. That difference is intuitive pattern recognition formed by experience. Dr. Norman writes:

> "Studies of expertise in many other domains — chess, computer programming, physics — show substantially the same thing. Experts become experts by amassing a huge body of both formal and experiential knowledge." Id. at 20.

39. Intuition, fundamentally, represents an individual's pattern recognition abilities based on bits of knowledge obtained by experience. When we use intuition, we do not go through a rational analysis of multiple alternatives, with deep evaluation of the consequences of each option. Intuition is more than simply a gut instinct. It involves powerful cognitive processes that draw on the wealth of experience that we have stored in our brains. See Michael Roberto, The Art of Critical Decision Making, (The Teaching Company 2009) p. 69. "You see a clear distinction between novices and experts. Novices don't have the experience to engage in the pattern recognition that an expert can employ." Id. at 78. They don't have the base of patterns, the experience, to engage

Complaint                                                    Page 18 of 45

in pattern recognition that an expert can employ.  Ibid.  Dr. Roberto has an A.B., M.A., and D.B.A. from Harvard.  He has published his research extensively, winning awards for teaching excellence at the prestigious Harvard Business School.

40. Simply stated, in testing already skilled attorneys on *entry* level tests you are comparing apples (experts) with apple seeds (novices).  This selection process penalizes experienced attorneys in the same way that a parking meter fitted for quarters is going to reject a silver dollar.  A quarter may at first glance look like a silver dollar; but a silver dollar is thicker, worth far more, ten times more rare because most exam takers are not already lawyers, and it does not fit in the standard quarter opening.

41. Henry Harpending is a professor of anthropology at the University of Utah. He has written: "Personal computers are divisible into major races — Compaq, Dell, Gateway, Micron …. Are there deep essential differences between Clone X and Clone Y?  Hardly.  Take the cases off and we can barely tell them apart.  The components of PCs are completely interchangeable."  The same holds true for American lawyers. They go to the same law schools and are taught the same law.  As a PC is a PC a competent lawyer is a competent lawyer.  Remove the state of initial entry level licensing and we can barely tell them apart.

**C. Disparate Impact & Inattentional Blindness**

42. The ABA, in addition to endorsing admission on motion, adopted a first-time bar passage rate of at least 75%, or its member schools risk losing their accreditation.[11] The first-time pass percentage pass rate on the July 2008 bar exam was 83%.[12]  The chart below reflects the statistics on the California July experienced attorneys' examination,  and the experienced attorney pass percentage in the minority of states still requiring experienced attorneys to reinvent the wheel, and take another bar exam.[13]

---

[11] "ABA Votes on Bar Passage Journal" Daily Journal February 13, 2008 p. 3.
[12] Los Angeles Daily Journal November 25, 2008  p.1
[13] From the NCBE web page http://www.ncbex.org/bar-admissions/stats/

Complaint                                                    Page 19 of 45

| Jurisdiction | 2004 | | | 2005 | | | 2006 | | |
|---|---|---|---|---|---|---|---|---|---|
| | Taking | Passing | % Passing | Taking | Passing | % Passing | Taking | Passing | % Passing |
| California | 338 | 131 | 39% | 325 | 92 | 28% | 319 | 114 | 36% |
| Georgia | 73 | 65 | 87% | 79 | 69 | 87% | 118 | 103 | 87% |
| Maine | 10 | 9 | 90% | 4 | 4 | 100% | 10 | 8 | 80% |
| Maryland | 75 | 69 | 92% | 90 | 79 | 88% | 90 | 86 | 96% |
| Mississippi | 4 | 4 | 100% | 3 | 3 | 100% | 3 | 2 | 67% |
| N. Mariana Islands | 6 | 5 | 83% | 3 | 3 | 100% | 5 | 4 | 80% |
| Rhode Island | 20 | 16 | 80% | 13 | 13 | 100% | 16 | 15 | 94% |
| Utah | 8 | 8 | 100% | 9 | 8 | 89% | 2 | 1 | 50% |
| TOTALS | 536 | 307 | 57% | 526 | 271 | 52% | 563 | 333 | 59% |

43. The disparate impact of this licensing exam raises red flags that warrant further investigation. Statistics, in general, dictate that most populations will have a Bell Curve shaped distribution, with 2/3 of the population within one standard deviation from the mean. According to California State licensing officials, two out of three attorneys already licensed in other states, are threats to the public and cannot be safely trusted to practice law. This conclusion, of course, is based on licensing tests that fail to meet testing Standards.

44. Notwithstanding that the California licensing test for experienced attorneys is graded in an assembly line and not a valid or reliable test, two out of three experienced attorneys are routinely failed on the July bar exam because of what scientists have called "inattentional blindness." A taped study at Harvard University demonstrates "inattentional blindness." There were two teams of basketball players, one wearing blue and one white, throwing the ball to each other. Participants were asked to count the passes from team members to each other. A man in a gorilla costume walked into the middle of the action, brushing shoulders with the players, turned directly toward the camera, beat his chest, and slowly walked off the Court. The study showed that more

Complaint

than fifty percent of the  participants in the study were so absorbed in counting the passes they did not see the gorilla in their midst.  Afterwards, when the participants watched the tape again, they were so surprised when the gorilla was pointed out to them that many of them accused the experimenters of having doctored the tape between viewings.[14]  The bar exam graders are paying attention to *entry level* signs, and experienced attorneys, like former Stanford Law School Dean Kathleen Sullivan who was failed on the exam, is a gorilla in their midst.

### D.  Bar Examiners on Steroids:  The California Experienced Attorney Licensing Test Fails to Satisfy Testing Standards

45. The Standards for Educational and Psychological Testing (1999) (Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education) (Standards) were developed "to provide criteria for the evaluation of tests, testing practices, and the effects of test use." Id.  at p. 2. "When tests are at issue in legal proceedings and other venues requiring expert witness testimony it is essential that professional judgment be based on the accepted corpus of knowledge in determining the relevance of particular standards in a given situation.  The intent of the Standards is to offer guidance for such judgments." Id. at 4.

46. Under the Standards, *validity* analysis addresses the question of whether the proposed interpretations and uses of the test scores make sense and are justified.[15] The *reliability* of test scores is defined in terms of their consistency (or dependability, or reproducibility) over repeated measurements. *Reliability* addresses the question of

---

[14] Matthew W. Syed, Bounce: Mozart, Federer, Picasso, Beckham and the Science of Success, p. 226-27 (Published Harper, 2010)
[15] Michael T. Kane, "Reflections on Bar Examining" The Bar Examiner,  at p.8 (Nov. 2009)

Complaint                                                                    Page 21 of 45

whether we would get approximately the same scores if we repeated the test.  If the test scores fluctuate widely from one set of questions to another, or from one grader to another, it is hard to interpret the scores for any particular test administration as an indication of a candidate's qualifications.[16] There are standard statistical indices for the *reliability* of test scores. The most basic of these is the *standard error of measurement*. A *reliability coefficient* can be defined in terms of the average magnitude of the standard *error*. A fairly high reliability (above 0.8; preferably above 0.9) is expected for testing programs that are used to make high-stakes decisions about individuals.[17] For example, if two graders agree on the score, the correlation coefficient is 1.00 and if there is no agreement the correlation coefficient is zero.  Bar examinations are high-stakes licensing examinations because they have serious consequences.[18]

47. The State Bar of California prepares a report on each bar exam for the California Supreme Court.  Standard 14.15 provides that "estimates of the reliability of test-based credentialing decisions should be provided."  In light of Standard 14.15, deeply buried so as to be unnoticeable, the State Bar provides an estimate of the reliability by way of a correlation coefficient.  That is, the degree by which the graders on the *subjective test* sections agree with themselves.  The measurement error is another way of referencing the correlation coefficient.  The Report(s) to the California Supreme Court on the California Bar Examination documents the reader correlation on the 100% subjective eight-question subjective tests given to experienced attorneys as follows:

> February 2001 reader correlation .41
>
> July 2001 reader correlation .48
>
> February 2002 reader correlation .38

---

[16] Id. at p 9.

[17] Id. at p 9.
[18] Id. at 9.

July 2002 reader correlation .40

February 2003 reader correlation .48

February 2004 reader correlation .39

July 2004 reader correlation .41

These experienced attorney reliability results confirm Dr. Norman's conclusion that getting bar graders to agree on subjective scores is virtually impossible.

48. Five other nationally respected testing experts have concluded that California's 100% subjective high-stakes licensing tests given to experienced attorneys does not  meet testing Standards.

49. First, Dr. Phillip L. Ackerman is a Professor of Psychology at Georgia Institute of Technology; the Editor, Journal of Experimental Psychology: Applied; a Fellow of the American Psychological Association and a member of the American Educational Research Association and the National Council on Measurement in Education (these are the three organizations that generate the Standards on Psychological and Educational Testing).  Dr. Ackerman wrote the chapter on testing in K. Anders Ericsson, Ed., The Cambridge Handbook of Expertise and Expert Performance, supra, and he is one of the leading testing experts in the world.[19]   Dr. Ackerman has reviewed the State Bar's Report to the California Supreme Court on the California Bar Examination and other material he deemed necessary to form an expert opinion.

50. Dr. Ackerman's professional opinion is that the Attorney's Examination for experienced sister-state attorneys fails to meet the Standards for Educational and

---

[19] Over the past 15 years, Dr. Ackerman has published 12 reviews in the Mental Measurements Yearbook (which is generally regarded as the "bible" for critical reviews of commercial, educational, psychological, and organizational tests).  Over the past 25 years, he has consulted on educational and occupational testing for the following organizations: U.S. Air Force, U.S. Army, U.S. Navy,  Personnel Research and Development Center, U.S. Department of Education, Minnesota Air Traffic Control Center (FAA), The College Board, Educational Testing Service (ETS), and General Motors.

Complaint                                                                 Page 23 of 45

Psychological Testing.  Multiple Standards have not been met.  More particularly, Dr. Ackerman declares, under oath:

> "The scores on the Attorney's Examination are determined in a manner that is not consistent with professional standards. The reliability of the test scoring procedures fails to reach a level that would be acceptable for high-stakes testing. (Specifically, inter-rater agreement is quite low, a correlation of .48 between raters indicates only 23% shared variance among ratings; source: Klein & Bolus; Gansk & Associates 2003.) **An acceptable level of reliability for such high-stakes testing would be shared variance in the neighborhood of 70% or higher (corresponding to reliability of about .84 or higher).** (Emphasis added)  (Exhibit A ¶ 4c)
>
> ...
>
> When the goal of inter-rater reliability is preferably in the range of .8 to .9 as noted by Dr. Kane, and the inter-rater reliability of the California Attorney's Examination is consistently reported to be below .5, there can be little doubt that the reliability of the decisions made on the basis of the scores is extremely low, and not acceptable. (Exhibit A ¶ 9)

51. Dr. Ackerman further concludes the "Attorney's Examination **lacks content-related validity**" (Exhibit A ¶ 4a), and it "**has never been demonstrated to have criterion related validation,** (Emphasis added) in terms of evaluating the scores on the test and comparing them to performance of practicing attorneys.  (Exhibit A ¶ 4b).

52. Second, Dr. Gary H. McClelland, a professor at the University of Colorado at Boulder is also an expert on statistics and measurement.  Dr. McClelland previously studied the Colorado bar examination and based on that study wrote "Assessing Bias in Professional Licensing Examinations by Checking Internal Consistency," 9 Law and Human Behavior, No. 3, p. 305 (1985).  Dr. McClelland declares, under oath:

> I have reviewed Dr. Phillip L. Ackerman's "Evaluation of the Psychometric Adequacy of the California Attorney's Examination" dated February 15, 2008, and generally agree with it.  Dr. Ackerman is a credible psychometrician as well. **In my opinion, the lack of an explicit equating procedure for the Essay and Performance Test sections is a fatal flaw. The degree of inter-rater agreement is dreadful.  I do not believe any scientist would ever publish data based on such low inter-rater agreement**. (Emphasis added)

Complaint                                                                    Page 24 of 45

53. Third, Dr. Susan Case, the Director of Testing for the NCBE, avows that non-multiple choice format tests, such as essay and performance tests "because of their limitations, such as low reliability, lack of anonymity, and lack of standardization, should not be used in isolation." See Susan M. Case, "Licensure In My Ideal World," The Bar Examiner, p. 27 November 2005.  The California Bar exam for experienced attorneys is a 100% subjective test used in isolation.

54. Fourth, the NCBE's Dr. Kane opines, "If it were feasible to evaluate performance in practice directly, this would be the preferred approach." Michael T. Kane, "The Role of Licensure Tests," The Bar Examiner, p. 34 (February 2005). According to the ABA and the NCBE, nationally respected peer groups, the preferred approach is to evaluate practice directly based on the attorney's experience.  Dr. Kane, as noted above, states the industry standard for reliability is preferably .9 for bar examinations.

55. Fifth, Dr. Stephen P. Klein prepares the report for the California Supreme Court on each bar exam.  Dr. Klein is paid handsomely to provide the California Supreme Court with full and fair disclosure.  Dr. Klein in other writings, however, emphasizes the danger caused by using 100% subjective high-stakes tests in isolation. See Stephen P. Klein, "What Do Test Scores in Texas Tell Us?"  (Published 2000 by RAND) Dr. Klein admits:

> "Our research results illustrate the danger of relying on statewide test scores as the sole measure of student achievement when these scores are used to make high-stakes decisions about teachers and schools as well as students. We anticipate that our findings will be of interest to local, state, and national educational policymakers, legislators, educators, and fellow researchers and measurement specialists." [20]

---

[20] http://www.rand.org/pubs/issue_papers/IP202/index2.html;

56. This Dr. Klein evidentiary admission proves the California 100% subjective bar exam for experienced attorneys is fundamentally flawed because it is used as the sole measure of experienced attorney competence.

57. Dr. Klein also admits, "While many bar exam graders believe they can recognize a passing answer when they see one, there is strong empirical evidence to the contrary." See Stephen P. Klein, "Essay Grading: Fictions, Facts and Forecasts," The Bar Examiner p. 23, 25 (August 1985).

58. Clear and compelling evidence shows the California bar exam for experienced attorneys, the putative gold standard, fails to satisfy testing Standards. This licensing exam should be shelved in the same way licensing officials stopped licensing printing presses based on content centuries ago.

59. According to the ABA, which the Supreme Court has held is the standard for reasonableness, Wiggins v. Smith, *supra*, 539 US 510, 524 (2003), the state of the art in testing experienced attorneys for licensing in another state is reciprocity. The above expert witness conclusions and test results plainly fail to meet peer group testing standards. The 100% subjective test that experienced attorneys are required to hurdle to enter the State Bar of California is inadmissible as evidence under the Federal Rules of Evidence 700 series for expert testimony and the Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993) line of cases because the results are not *reliable*, the test does not have *content* or *criterion validity*.

**FIRST CAUSE OF ACTION**
**VIOLATION of the PRIVILEGES & IMMUNITIES CLAUSES**
**& RIGHT TO TRAVEL**

60. The preceding allegations are incorporated by reference.

61. Like the inseparable First Amendment rights to speech, association, and petition, the Article IV Sec. 2 Privileges and Immunities, 14th Amendment Privileges and Immunities, and constitutional right to travel are intertwined and inseparable.

62. The High Court in <u>Supreme Court of New Hampshire v. Piper</u>, 470 U.S. 275

(1985) held,

> The lawyer's role in the national economy is not the only reason that the
> opportunity to practice law should be considered a "fundamental right." We
> believe that the legal profession has a noncommercial role and duty that
> reinforce the view that the practice of law falls within the ambit of the Privileges
> and Immunities Clause.[fn11] Out-of-state lawyers may — and often do —
> represent persons who raise unpopular federal claims. In some cases,
> representation by nonresident counsel may be the only means available for the
> vindication of federal rights. <u>Id</u>. at 281-82.

63. The U.S. Supreme Court has further squarely held bar admission on motion

is a constitutionally protected Privilege and Immunity. <u>See</u> <u>Supreme Court of Virginia v.

Friedman</u>, *supra*, 487 U.S. 59 (1988).  The Clause is implicated whenever a state

discriminates against either residents or citizens.   The norm under the Privileges and

Immunities Clause is comity.  <u>Id</u>. at 64.  In addition to admission on motion, the

fundamental rights protected by the Privileges and Immunities Clause include "the right

of a citizen of one state to pass through, or to reside in any other state, for purposes of

trade, agriculture, **professional pursuits**, or otherwise; to claim the benefit of the writ of

habeas corpus; to **institute and maintain actions of any kind in the courts of the**

**state**." (emphasis added) <u>Supreme Court of New Hampshire v. Piper</u>, *supra*, 470 U.S.

at 281 n. 10 (1985). The Clause implicates federal rights.  The universal principle

deduced from <u>Piper</u> and <u>Friedman</u> is that the Supreme Court has concluded that if all

men and women are created equal, and members of the bar are men and women, all

attorneys are created equal.

64. In <u>Piper</u> and its progeny, the defendant Courts proffered various reasons to

justify their challenged bar admission policies.  It was argued out-of-state lawyers will be

less familiar with local law; they will not be available for scheduled hearings and pro

bono work; they will be less concerned with their professional responsibilities; it will be

too difficult to supervise the ethics; admission on motion is discretionary and does not

come within the ambit of the Privileges and Immunities Clause. The Supreme Court rejected every justification as insubstantial.  It further recognized that many of the States that have put up fences primarily to protect their own lawyers from professional competition, which is not a legitimate state interest. "The Privileges and Immunities Clause was designed primarily to prevent such economic protectionism." Supreme Court of New Hampshire v. Piper, *supra*, 470 U.S. at 285 n. 18 (1985).

65. In Saenz v. Roe, (1999) 526 U.S. 489, the High Court in a landmark decision squarely extended the reach of the Privileges and Immunities Clauses to in-state residents and citizens.  The State of California sought to limit the welfare benefits of new residents to the amount they would have received in their State of prior residence. The High Court invalidated this statute.  It held the right to travel embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. Id. at 498-500.  It further held that newly arrived citizens had the same right to privileges and immunities enjoyed by other citizens of their new State — the third aspect of the right to travel.  That right is protected by the new arrival's status as both a state citizen and a United States citizen, and it is plainly identified in the Fourteenth Amendment's Privileges and Immunities Clause. Id. at 502-04.

66. There is no substantial justification for California Rules of Court 9.45 and 9.46 to provide the plaintiffs with second class Privileges and Immunities, virtually identical to the second class welfare benefits provided to new arrivals invalidated in Saenz v. Roe.

67. There is no substantial justification to believe sister-state attorneys as a class that are registered under Rules 9.45 and 9.46 are less qualified than California licensed attorneys.  A study at the end of 2009 revealed that of the 790 attorneys registered as in-house counsel, "most of the incoming lawyers graduated from law schools in New York, Boston, and the District of Columbia." See 26 Law. Man. Prof. Conduct 171 The

study reports only 16 lawyers were registered under Rule 9.45.  There is no substantial justification for lawyers representing the indigent registered under Rule 9.45 to be provided a three year window to practice before they have to pass the California bar exam while in-house counsel have an unlimited shelf life and never have to take the exam.

68. There is no substantial justification to require sister-state attorneys to pass the California bar exam when: (a) 39 States have adopted admission on motion; (b) multiple nationally respected testing experts conclude this putative test does not pass validity and reliability testing Standards;  (c) the test does not have *content* and *criterion* validity;  (d) the MacCrate Study reveals the vast majority of fundamental lawyering skills cannot be tested through a pen and paper test; and (e) the cognitive science of expertise and expert performance demonstrates the competence and skills of experienced professionals is intuitive, cannot be tested, is far superior to novices, and is primarily based on experience and pattern recognition skills developed over years of practice.

69. There is no substantial justification for the Plaintiffs not to have admission on motion Privileges and Immunities when Supreme Court of Virginia v. Friedman, *supra*, 487 U.S. 59 (1989) holds State discrimination on motion against an otherwise qualified lawyer on the basis of citizenship or residence is unconstitutional. These challenged state rules and testing policies have the purpose and self-protective effect to put up walls against non-residents and citizens, preventing them from doing business in California in terms of substantial equality, "pursuing professional pursuits," and "instituting and maintaining  actions" in the state courts, in violation of the Privileges and Immunities Clauses and the Right to Travel.  Supreme Court of New Hampshire v. Piper, *supra*, 470 U.S. at 281 n. 10 (1985).

70. The First Amendment safeguards the Privilege and Immunity to speak, associate, and petition the state courts for the redress of grievances.  As the Supreme

Complaint                                                                                      Page 29 of 45

Court stated last term, the First Amendment bars regulatory distinctions based on a speaker's identity. <u>Citizens United v. Federal Election Commission</u>, 130 S.Ct. 876 (2010) .  Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. <u>Id</u>. at 890.  The challenged rules and testing policies that are ratified under color of state law make Privilege and Immunity distinctions that are in practical effect, based on residence and citizenship, which are unlawful because they make distinctions based on where the lawyer came from.

**SECOND CAUSE OF ACTION**
**VIOLATION of the COMMERCE CLAUSE**

71. The preceding allegations are incorporated by reference.

72. In <u>Wiesmueller v. Kosbucki</u>, 571 F.3d 699 (7th Cir. 2009), Plaintiffs, and the class they represent, are graduates of accredited out-of-state law schools who want to practice law in Wisconsin.  They sued members of the Wisconsin Board of Bar Examiners and the Supreme Court of Wisconsin, charging a violation of the Commerce Clause of Article I of the Constitution and seeking injunctive relief. They argue that the "diploma privilege" discriminates against graduates of out-of-state law schools who would like to practice law in Wisconsin.  Graduates of accredited law schools in states other than Wisconsin who would like to practice law in that state are at a disadvantage vis-à-vis graduates of Wisconsin's two law schools, because, unlike those graduates, to be admitted to the Wisconsin bar they have either to have practiced law for five years in another state or to have passed the Wisconsin bar exam.  The Seventh Circuit held that regulating the practice of law is a legitimate government function but it is not exempt from scrutiny under the commerce clause. <u>Id</u>. at 707  It reversed a dismissal order and remanded the case to the District Court to allow plaintiffs to prove their case.

73.  While the effect on commerce of the discriminatory diploma privilege may be small and, if so, not much would be required to justify it. <u>Id</u>. at 705, the California bar

exam for experienced attorneys is a fundamentally different species of discrimination against inter-state commerce. The Supreme Court "has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor instate economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Id. at 703 (citing Brown-Forman Distillers Corp. v. New York State Liquor Authority, 476 U.S. 573, 578-79 (1986))

74. The State's licensing regulations also directly regulate and discriminate against interstate commerce, and its effect is to favor instate economic interests over out-of-state interests, thus the regulations are per se invalid. Wiesmueller, 571 F.3d at 703. The State's interest in public protection is also not legitimate in re-testing experienced attorneys via tests that fail to meet testing Standards. Moreover, outsourcing a billion dollars a year in American legal work to Indian lawyers provides compelling evidence the challenged rules are designed to favor the in-state economic interests of already licensed lawyers.

75. More particularly, there is compelling evidence proving intentional discrimination against interstate commerce. The California Supreme Court is the **user** of the State Bar's 100% subjective test for experienced sister-state attorneys. Standard 1.10 provides,

> "Users should be given sufficient guidance to enable them to judge the degree of confidence warranted for any use or interpretation recommended by the test developer. **Test manuals and score reports should discourage over interpretations of information that may be subject to considerable error. This is especially important if interpretation of performance on isolated items, small subsets of items, or subtest scores is suggested**."

76. The State Bar in its <u>Reports</u> has breached its duty of care to warn the California Supreme Court of the well known dangers of using 100% subjective "high-stakes" tests in isolation on experienced attorneys. Dr. Stephen P. Klein, who helps write the <u>Report</u> for has publicly admitted such high-stakes isolated tests are dangerous. The <u>Reports</u>, however, conceals this admitted material fact. The California Supreme Court has <u>not</u> been provided full disclosure. This breach of duty illustrates California licensing officials, like the wolf left in charge of the hen-house, have a self-serving obsession in eliminating sister-state attorney competition.[21]

77. The <u>Standards</u> also emphasize that evaluating acceptability (of a test) involves (a) professional judgment that is based on a knowledge of behavioral science, psychometrics, and the community standards in the professional field to which the tests apply; (b) the degree to which the intent of the standard has been satisfied by the test developer and user; (c) the **alternatives that are readily available** (emphasis added); and (d) research and experimental evidence regarding feasibility of meeting the standard." <u>Id</u>. at 4. This fact has also been conveniently concealed from the California Supreme Court by State licensing officials who have a territorial and monopoly interest in maintaining their wall.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE FIRST AMENDMENT

78. The preceding allegations are incorporated by reference.

---

[21] As renowned Stanford Law Professor Deborah Rhode avows:
"No occupational group, however well intentioned, can make unbiased assessments of the public interest on issues that place its own status and income directly at risk." <u>See</u> Deborah A. Rhode, <u>In The Interests of Justice</u> p. 16 (2000 Oxford University Press). Professor Rhode further concludes, "In short, the current licensing system cannot be justified on rational policy grounds. It persists largely due to professional interests and public inertia. Once admitted to the bar, lawyers have little incentive to eliminate arbitrary or overbroad restrictions if the effect would be to increase the number of potential competitors." <u>Id</u>. at 154.

**A. Rules 9.45, 9.46, and the Experienced Attorneys' Exam Constitutes Unlawful Content and Viewpoint Discrimination**

79. "A regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination." Consolidated Edison Co. v. Public Serv. Comn'n, 447 U.S. 530, 546 (1980). "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n, 429 U.S. 167, 175-176 (1976). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." Lakewood v. Plain Dealer Publishing Co, 486 U.S. 750, 763 (1988).   In this case, this danger is at its zenith by requiring experienced attorneys to pass licensing tests that fail to meet testing Standards.

80. Moreover, distinctions in the right to exercise First Amendment freedoms are subject to strict scrutiny.  In Citizens United v. Federal Election Commission, 130 S.Ct. 876, (2010),  the Court held:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. Id. at 890
>
> ...
>
> Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts

Complaint

were to begin saying what means of speech should be preferred or disfavored. Id. at 890

81. The basic premise underlying the Court's ruling in Citizens United is its iteration, and constant reiteration, of the proposition that the First Amendment bars regulatory distinctions based on a speaker's identity, including its "identity" as a corporation. Id. at 930 (Justice Stevens in dissent). Courts, too, are bound by the First Amendment. Id. at 891.

82. Rules 9.45 and 9.46 make differential licensing distinctions based on a speaker's identity as a member of the favored and disfavored bar. Requiring experienced attorneys to satisfy the unbridled discretion of local State licensing officials, when it is well known that bar graders seldom agree on scores, and the test per se fails to meet testing Standards, is content and viewpoint discrimination.

**B. Rules 9.45, 9.46, and the Experienced Attorneys' Exam Are Overbroad**

83. The Ninth Circuit has recognized, "basic analysis under the First Amendment . . . has not turned on the motives of the legislators, but on the effect of the regulation." City of Las Vegas v. Foley, 747 F.2d 1294, 1998 (9th Cir. 1984). The motive for the 9.45, 9.46 and the experienced attorney exam does not change the First Amendment analysis.

84. The categorical disqualification from admission on motion of experienced attorneys from 49 states is patently overbroad. This overbreadth is demonstrated by the ABA's recommendation for admission on motion, its adoption in 39 States, 65,000 attorneys admitted on motion in the last ten years, a billion dollars a year outsourced to Indian lawyers, the California Futures Commission, and SB 1782 calling for the California Supreme Court to adopt admission on motion.

***

***

***

Complaint                                                      Page 34 of 45

**C. Rules 9.45, 9.46, and the Experienced Attorneys' Exam Abridges the Constitutional Right to Petition and Engage in Political Speech on Matters of Public Concern**

85. Legal Services Corporation v. Velazquez, 531 U.S. 533 (2001), held that an attorney has a First Amendment right to advocate on behalf of his client in court. The Court upheld a First Amendment challenge by indigent clients to a congressional statute allocating federal funds to local organizations for the purpose of providing legal representation to poor people in non-criminal proceedings, but with a condition prohibiting "legal representation ... involv[ing] an effort to amend or otherwise challenge existing welfare law." Id. at 536-37. The Court interpreted this condition as "prevent[ing] an attorney from arguing to a court" that a state statute conflicts with a federal statute or that either a state or federal statute violates the Constitution. Id. at 537. The Court characterized the congressional funding scheme as a limited public forum, and thus found its viewpoint-discriminatory condition constitutionally impermissible.   As in Legal Services where a prior restraint excluded clients' otherwise-reasonable arguments from the courtroom before the clients had a chance even to advance them, Plaintiffs are excluded from state public forums even before they have a chance to appear. See Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, (1975) ("Any system of prior restraint . . . comes to this Court bearing a heavy presumption against its constitutional validity."); Legal Services, 531 U.S. at 544-45, 547-48. Here, as in Legal Services, the State restrictions imposed by Rules 9.45, 9.46, and the experienced attorney exam, insulate the State from challenge by excluding the Plaintiff experienced lawyers from a public forum on matters of public concern.

86. The operations of the courts and the judicial conduct of judges are matters of utmost public concern. Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978). Litigation is a form of political expression. In re Primus, 436 U.S. 412, 428.  The First Amendment protects "litigation [as] a means for achieving the lawful objectives of

equality by all government. "NAACP v. Button, 371 U.S. 415, 429 (1963). It is thus a form of political expression. Ibid. "It is no answer to the constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." Id. at 438-39.  Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid.  Procunier v. Martinez, 416 U.S. 396, 419 (1974).

87. Here, the State restrictions imposed by Rules 9.45, 9.46, and the experienced attorney exam, insulate the State from challenge by categorically excluding the Plaintiff licensed lawyers in a public forum on matters of public concern.

**D. Rules 9.45, 9.46, and the Experienced Attorneys' Exam Constitutes Compelled Association that Abridges Plaintiffs' First Amendment Right to Association**

88. "The Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion."  Roberts v. United States Jaycees, 468 U.S. 609, 618  (1984)  The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. Ibid. "Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability to independently define one's identity that is central to any concept of liberty." Ibid. An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. Id. at 622. Government actions that may unconstitutionally infringe upon

Complaint                                                                                                    Page 36 of 45

this freedom can take a number of forms. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group. Ibid.  The right to associate also includes a right not to associate. Roberts v. United States Jaycees, *supra*, 468 U.S. at 622.  The Court in Roberts applied the strict scrutiny standard of review, and invalidated the restriction.

89. Here, as in Roberts, the Rules 9.45, 9.46, and the attorneys' exam, imposes penalties and withholds benefits because of plaintiffs' membership in a disfavored class of attorneys.  These attorneys are treated as second class citizens based on a historical vestige from the separate but equal era that are based on in-group hatred against outsiders.

90. The State has the burden of proof on these First Amendment challenges. It cannot meet its burden of proof.  See Supreme Court of Virginia v. Friedman, *supra*, 487 U.S. 59 (1988)(holding bar admission on motion is a constitutionally protected Privilege and Immunity); the First Amendment bars regulatory distinctions based on a speaker's identity. Citizens United v. Federal Election Commission, *supra*, 130 S.Ct. 876 (2010)  Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Id. at 890.

## FOURTH CAUSE OF ACTION
## FOURTEENTH AMENDMENT VIOLATION OF SUBSTANTIVE DUE PROCESS

91. The preceding allegations are incorporated.

92.  The experienced attorney exam violates substantive due process because it is based on archaic assumptions, similar to women being classified as witches, and it is not a valid or reliable measuring device, similar to the procedures employed to prove witchcraft.

***

Complaint

## FIFTH CAUSE OF ACTION
## FOURTEENTH AMENDMENT VIOLATION OF PROCEDURAL DUE PROCESS

93. The preceding allegations are incorporated by reference.

94. California Supreme Court Chief Justice RONALD M, GEORGE has testified under oath, the Court is "**dysfunctional,**" and that if something is not done, the backlog of [these mandatory death penalty review] conviction proceedings will continue to grow "until the system falls of its own weight." [22]  The California Supreme Court has 670 capital cases on its swollen docket.  Over one-half of them have not been assigned counsel.  Some capital cases have been pending 25 years.  Seventy percent of the habeas petitions from California filed in the federal court are granted. Federal Courts in California are drowning in habeas petitions from the California State Courts, where State hearings are seldom held past the trial Court stage, and where written decisions on federal claims are seldom furnished. Former Chief Justice GEORGE has also blasted California's money-driven ballot measure system, blaming it for creating a "**dysfunctional state government.**"[23]

95. Under California State law, the California Supreme Court has original jurisdiction over bar admissions, and anyone dissatisfied with a State Bar of California decision has the right to appeal.  The Supreme Court has de novo review.[24]  This right to review is an artifice that is not available in practice.  An attorney who petitions for

---

[22] Final Report California Commission on the Fair Administration of Justice http://www.ccfaj.org/ p. 115

[23] See "Chief Justice Blasts Voter Initiatives" Daily Journal October 12, 2009 (California Constitution has been amended more than 500 times since 1879)

[24] "(A)ny applicant [for admission] who is denied certification may seek review of the Committee's [Bar Examiners] action in this court."  Kwasnik v. State Bar, (1990) 50 Cal.3d 1061, 1069.  "In that review we give great weight to the Committee's findings, but they are not conclusive. We examine the evidence and make our own determination as to its sufficiency, resolving reasonable doubt in favor of the applicant." Ibid.

review has to get in line behind 670 capital appeals, and thousands of other petitions seeking review.

96. Several plaintiffs have filed petitions for review in the California Supreme Court. See Kimberly Jane Alfriend v. State Bar of California[25] S172454 (April 2009). The 300 page petition in Alfriend asked the California Supreme Court to revise Rules 9.45 and 9.46, and to adopt the ABA's recommendation for reciprocity, providing supporting evidence that five nationally respected testing experts have declared the experienced attorneys' bar exam fails to meet testing Standards. These petitions were denied without a hearing, without the State Bar of California even filing a response. Joseph v. Committee of Bar Examiners S171203 (March 2009) was similarly rubber-stamped denied.

97. Other experienced sister-state attorneys have also asked for review and rubber-stamped denied. Detrick v. Committee of Bar Examiners S172249 (June 2009); Peacock v. Committee of Bar Examiners S172249 (Oct 2009).

98. The last time the California Supreme Court granted review to an experienced attorney denied certification on the bar exam was almost 70 years ago in Staley v. State Bar of California, 17 Cal.2d 119 (1941).

99. California Bus. & Prof. Code 6065(a)(2), provides, "The applicant also has the right to inspect the grading of the papers whether the record thereof is marked upon the examination or otherwise." This statutory right is a charade. It does not exist in practice because there is no record of the grading marked on the exam or anywhere else. There is no paper trail only a final grade. There is no record of who graded the

---

[25] Since the California Supreme Court is admittedly dysfunctional, and it never grants review, not only because of its congested docket, but also because of isolationist tendencies, and it is locally popular to protect California lawyers from competition, Plaintiff's expressly preserved their federal claims for a federal judicial forum. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411 (1964); United Parcel Service v. California Pub. Util., 77 F.3d 1178, 1185 (9th Cir. 1996).

exam, where and when it was graded, of if anyone even read the answer.  The scores are arbitrary, random, and capricious.

100. Even assuming someone read the experienced attorney's answer, the assembly-line grading process discriminates against experienced attorneys because the graders pay selective attention and they are primed to passing entry level answers.  An experienced attorney's answer flies over the entry-level standard in the same way a silver-dollar does not fit a parking meter fitted for quarters.

101. In Willner v. Committee on Character and Fitness, 373 US 96 (1963), an applicant for admission to the bar of New York was repeatedly denied admission to the bar based on hearsay evidence from someone petitioner claimed was out to get him. The Court held that procedural due process requires confrontation and cross-examination of those whose word deprives a person of his livelihood. Id. at 103. Plaintiff experienced lawyers, as in Willner, are denied the right to confront and cross-examine California licensing officials who have denied them bar admission. Plaintiffs are denied admission without a hearing or any right to confront and cross-examine licensing officials, who deny plaintiffs of their livelihood on the basis of test results that are inadmissible as evidence.  This unbridled discretion under color of state law is unchecked because of the California Supreme Court's congested docket.  The defendants' agents acting under color of law have constructed a procedural Berlin wall around the state eliminating competition.

102. A sister-state attorney who is denied certification for admission based on charges of ethical unfitness is entitled to a hearing before the State Bar Court.   Thus, procedural due process requires that a sister-state attorney who is denied certification for admission based on the ground that he or she failed the attorney's bar exam should be entitled to a hearing before the State Bar Court and same rights to call and confront witnesses found applicable in Willner.

***

Complaint                                                                        Page 40 of 45

**SIXTH CAUSE OF ACTION**
**VIOLATIONS of STATE LAW**

103. The preceding allegations are incorporated by reference.  Plaintiffs invoke the Court's supplemental jurisdiction.  The right to counsel is a California constitutional right.

104. The State of California's licensing scheme for sister-state attorneys also violates State law.  First, California has an ironclad public policy favoring free competition in the professions.  Bus. & Prof. § 16600, provides,

"Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

105. Second, <u>California Gov. Code</u> § 12944 declares:

(a) It shall be unlawful for a <u>licensing board to require any examination or establish any other qualification for licensing that has an adverse impact on any class by virtue</u> of its race, creed, color, <u>national origin or ancestry</u>, sex, <u>age</u>, medical condition, physical disability, mental disability, or sexual orientation, <u>unless the practice can be demonstrated to be job related</u>.

...

(f) As used in this section, "licensing board" means any state board, agency, or authority in the State and Consumer Services Agency that has the authority to grant licenses or certificates which are prerequisites to employment eligibility or professional status.

106. Third, the California policy in favor of reciprocal licensing privileges is statutorily enacted for virtually every learned profession.  Certified Public Accountants are granted reciprocity even if they don't work primarily in California or reside in California.  <u>Cal. Bus. & Prof Code</u> § 5087 (West 2006)).  Moreover, the applicant is also entitled to a temporary CPA permit while his or her application is processed.  <u>Id</u>. at § 5088.  Sister-state Certified Public Accountants may not know anything about California income taxes when they arrive.  However, they learn by working with it.  California reciprocal licensing privileges and immunities is also provided to sister-state

Complaint                                                                                                    Page 41 of 45

engineers,[26] psychologists,[27] veterinarians,[28] geologists or geophysicists,[29] licensed nurses,[30] doctors of chiropractic,[31] physicians and surgeons who have a certificate as a diplomat from the National Board of Medical Examiners,[32] physicians and surgeons with four years of experience licensed under comparable standards receive California reciprocity after an "oral" exam,[33] and dentists licensed under comparable standards receive California reciprocity after an "oral" exam, and may be given a test on California ethics.[34]

107. Fourth, the California legislature and governor have already enacted legislation authorizing bar admission on motion for experienced attorneys. Senate Bill 1782 enacted 99-0 signed by the Governor in 2000 declared: "[i]t is the intent of the Legislature that the Supreme Court of California should adopt rules permitting the admission to practice law in California of an attorney who is licensed in another state and who has not passed the California bar exam."

---

[26] "The [Professional Engineers] board ... may issue a certificate of registration as a professional engineer, without written examination, to any person holding a certificate of registration issued to him or her by any state or country when the applicant's qualifications meet the requirements of this chapter, and rules established by the board." Cal. Bus. & Prof Code § 6759.

[27] "The [California Psychology] board shall grant a license without examination to any person who, at the time application is licensed or certified by a psychology licensing authority in another state if the requirements for obtaining a certificate or license in that state were substantially equivalent to the requirements of this chapter." Cal. Bus. & Prof Code § 2946.

[28] Cal. Bus. & Prof Code § 4848.

[29] Id. § 7847.

[30] Id. § 2732.1.

[31] Sister state doctors of chiropractic licensed under comparable standards receive California reciprocity. See Cal. Bus. & Prof Code Chap. 9, as added by Stats. 1996, c890 (A.B. 2802).

[32] Id. § 2151.

[33] Id. § 2135.

[34] Id. § 1633.5.

Complaint

108.  S.B. 1782 further stated, "[t]he task force should consider all of the following factors:

(a) Years of practice in other states.

(b) Admission to practice law in another state.

(c) Specialization of the attorney's practice in another state.

(d) The attorney's intended scope of practice in California.

(e) The admission requirements in the state or states in which the attorney has been licensed to practice.

(f) Reciprocity with and comity with other states.

(g) Moral character requirements.

(h) Disciplinary implications.

(i) Consumer protection."   Id.

109.  As no fiduciary can serve two masters, the vast majority of the California task force was composed of California attorneys in private practice partnerships.  They were wearing dual hats, serving the public without pay and their partners with pay.  The law firm partnership of one of the task force members in 2000 publicly reported revenue of 642 million dollars and annual partner profits of $900,000.[35]  Not surprisingly, in light of its secret meetings behind closed doors entirely excluding the public from confrontation and active participation in the hearings, the task force proposed the adoption of Rules 9.45 and 9.46, concluding that no one should be provided full admission on motion, and recommending that the admission on motion issue should be reconsidered in the future after the results were in.  The task force recommendations were not based on the law. They are based on outdated assumptions, politics, and economic protection.

---

[35] "The Big Get Bigger in Lawyerland" Daily Journal, Apr. 26, 2001, at 1.

110.  Plaintiffs thus have been afforded unequal treatment violating their constitutional right to state equal protection and due process.  Foreign country lawyers have more privileges and immunities under California law then Plaintiffs.

## SEVENTH CAUSE OF ACTION
## 42 U.S.C. § 1983

111. The preceding allegations are incorporated thus violating 42 U.S.C. § 1983.

## EIGHTH CAUSE OF ACTION
## DECLARATORY JUDGMENT 28 U.S.C. § 2201

112. The preceding allegations are incorporated.  There is an actual controversy of sufficient immediacy and concreteness relating to the legal rights of the Plaintiffs and their injury, and their relation to and the duties of the Defendants, to warrant relief under 28 U.S.C. § 2201.

111. Plaintiffs therefore request the following relief:

- An Order declaring California Rules of Court 9.45 and 9.46 are invalid and unconstitutional.
- An Order declaring the California bar exam for experienced attorneys fails to meet testing Standards and it is invalid and unconstitutional.
- An Order declaring California's failure to have admission on motion is unconstitutional.
- An Order declaring that every sister-state attorney registered as a legal services attorney, or registered as in-house counsel, or who has been failed on the California bar exam since SB 1782 was enacted is entitled to admission on motion.
- An Order declaring California's failure to provide a hearing and the right of confrontation and cross-examination of licensing officials by any sister-state attorney denied certification is unconstitutional.

- An Order admitting Plaintiffs to the bar of the California Supreme Court.
- Costs.
- Attorney fees.
- Grant such other relief as may be just and proper.

Dated:  October 12, 2011

/s/ *Benjamin M. Dai*

For Plaintiffs NAAMJP  et. al.
BENJAMIN M. DAI, Esq.,
12106 Wilshire Blvd., Suite 5
Los Angeles, CA 90025
Phone 310 207 1776
Fax 310 207 1779
Ben@mjplaw.org

Complaint                                                                Page 45 of 45